*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


## OPINION

No. 04-10-00890-CV

**CITY OF LAREDO**,
Appellant

v.

Gilbert **BUENROSTRO**,
Appellee

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2009-CVQ-000813-D1
Honorable Jose A. Lopez, Judge Presiding

Opinion by:  Sandee Bryan Marion, Justice

Sitting:  Karen Angelini, Justice
Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  October 26, 2011

REVERSED AND RENDERED

Appellee Gilbert Buenrostro was employed by The City of Laredo for fifteen years as a police officer in the Laredo Police Department. The City terminated appellee's employment, and following an administrative hearing before the Firefighters' and Police Officers' Civil Service Commission (the "Commission"), the Commission upheld the City's decision. Appellee appealed to the district court and later moved for a traditional summary judgment on two grounds: (1) evidence admitted against him at the hearing before the Commission should have

been excluded as violative of his rights under the Fourth Amendment and (2) no substantial evidence supports the Commission's findings. The trial court rendered summary judgment in favor of appellee, ordered that appellee be reinstated to the position or class of service from which he was suspended, and ordered the City to pay appellee all wages and benefits lost as a result of his suspension. The City now appeals. For the reasons stated below, we reverse the trial court's judgment and render judgment affirming the Commission's order.

## BACKGROUND

The following background is taken from the transcript of the hearing before the Commission. During his employment by the City as a patrol officer, appellee was married to Raquel Buenrostro. Raquel had worked for the Laredo Police Department as a dispatcher until 2000. Early in the evening of November 15, 2008, Raquel took her husband's workplace keys without his knowledge or consent, entered the police substation, and found a cell phone used by her husband. Sometime between 9:00 p.m. and 11:00 p.m. on that same evening, appellee and Raquel argued after she confronted him about his possession of the cell phone, which had been given to him by his mistress Fannie Garcia. The telephone was registered in Garcia's name. The phone contained photos of a sexual nature of appellant and Garcia, semi-nude photos of Garcia, and a video of Garcia and appellee engaged in sexual activities. Appellee later told Garcia his wife had found the phone, and the next day, Garcia reported the phone as stolen.

After the argument of November 15, appellee left his house and parked in the lot of a Target. Realizing he did not have a charger for his other cell phone, appellee decided to return to his house to retrieve the charger and the phone Garcia gave him. The door to his house was barricaded by a wooden 2x4 plank because the lock was broken. According to appellee, he did not want to talk to Raquel, ask her any favors, or frighten or intimidate her. So, he decided to

"force the door open." As he was attempting to open the door, Raquel refused him entry and called 911. Appellee kicked in two doors, but then realizing he had inflicted "too much" damage, he left "because his charger was not worth all the trouble." Raquel cancelled the call to the police; however, a police sergeant came to the house and spoke with her. After the officer left, Raquel asked the officer to return so she could give him appellee's uniform, service equipment, and clothing because she did not want her husband back in the house.

The next morning, appellee returned to his house and knocked on the door. Raquel asked appellee to leave, he refused, and she called 911. Officer Michael Botello arrived at the house at about 7:55 a.m. and saw appellee sitting on a box reading the newspaper. Botello testified appellee had bloodshot eyes, and appellee said he had been drinking all night long. Botello asked appellee to speak with his partner, Officer Sanchez, while Botello spoke with Raquel. Botello said Raquel was crying, shaking, and scared. She told him appellee was kicking the door and trying to get inside the house. Botello said he heard children crying in the background.

After about twenty minutes, the police officers decided it was in everyone's best interest if appellee left the premises to sober up. The officers allowed appellee to rest inside his truck. After the officers left, appellee pulled his truck into the driveway, got out of the truck, and closed and locked both the drive-in and walk-in gates. He then proceeded to drive his truck forward and backwards, crashing into the fence. Raquel again called 911. This time, when the police arrived, they arrested appellee for assault, but later changed the charge to making terroristic threats.

On November 18, 2008, Raquel called Deputy City Manager Cynthia Collazo[1] stating she had a complaint against a police officer and that she had something to show Collazo. Because Raquel said she was caring for her infant and was "concerned for herself," Collazo

---

[1] Collazo oversees the Laredo Police Department, as well as other City departments.

agreed to meet Raquel at Raquel's house. The next day, Collazo and Assistant Police Chief Gilberto Navarro met with Raquel, who appeared nervous and upset. Raquel said she had a cell phone with pictures and a hand-written transcript of text messages from the phone. Raquel showed Collazo some photos on the cell phone that depicted a man wearing a Laredo Police Department uniform and a woman engaging in oral sex and other photos of a woman who was partially clothed. Raquel told her that the incidents depicted in the photos occurred during the man's working hours. At this time, Collazo was not aware the phone had been reported as stolen.

Navarro contacted Laredo Police Department Internal Affairs investigator Gilbert Magana, who came to Raquel's house. Raquel expressed her concern that the images on the phone would be erased or tampered with. Navarro handed the phone to Magana and instructed him to take the phone to the police station and download the pictures. At the police station, Magana examined the photos and downloaded them. When he realized the date and time stamp on the photos were not being copied, he photographed the images on the phone that included imprinted dates and times, which he believed reflected the moment the images were created or taken. The phone also contained a video file of appellee wearing his police uniform and engaging in oral sex with Garcia. During his review of the video, Magana heard background noise that included a dispatcher's voice transmitting over appellee's mobile radio. After examining appellee's work attendance records, Magana confirmed the video and several of the photos of appellee and Garcia were taken during appellee's on-duty hours. Some of the photos were taken inside the police station, including the restroom, lounge area, and by a staircase. During a pre-termination interview with the Chief of Police, appellee reviewed the photos, but said he could not recall whether he was on-duty or off-duty when they were taken.

Appellee was charged with several violations of the Rules and Regulations of the Firefighters' and Police Officers' Civil Service Commission of the City of Laredo. After the police department terminated appellee's employment, he appealed the decision to the Commission.[2] Chief of Police Maldonado testified at the hearing before the Commission that the photos alone may not have warranted termination; however, the terroristic threats charge alone would have. The Chief stated that the totality of the circumstances led him to decide appellee's employment should be terminated. At the hearing before the Commission, appellee testified he occasionally used the cell phone during work hours and while on patrol but during his twenty-minute break time. He said he took his breaks in the police department building or at Garcia's house. He said the photos and video were transferred from one phone to another during his breaks. After hearing all the evidence, the Commission determined that just cause existed for appellee's termination and ordered that appellee "be suspended without pay as a classified employee of the [Laredo Police Department], for an indefinite period, effective the date of the order to that effect by Police Chief Carlos R. Maldonado."

In his motion for summary judgment before the district court, appellee argued the standard set forth in *O'Connor v. Ortega*, 480 U.S. 709 (1987), regarding the "reasonableness" of an employer's search of an employee's property was not satisfied. Appellant contends the City's search of his cell phone was unreasonable under *O'Connor* and, therefore, illegal. Absent consideration of the photos and video downloaded from the phone,[3] appellant concludes the City's decision to terminate his employment was not supported by substantial evidence. The City asserts appellee did not preserve this particular Fourth Amendment argument because he

---

[2] Less than two hours after appellee received notice of his termination, the District Attorney decided not to prosecute the terroristic threat offense because Raquel withdrew her charge against appellee.

[3] Although Collazo said she was shown only six or eight photos while at Raquel's house, the letter of termination listed fifteen images, with date and time stamps, and one "movie," also with a date and time stamp.

failed to raise it at the hearing before the Commission. The trial court granted appellee's motion for summary judgment. On appeal, we do not consider whether appellant's Fourth Amendment argument was preserved because, as discussed further below, even without the photos and video there was substantial evidence to support the Commission's decision.

## SUBSTANTIAL EVIDENCE

A decision by the Commission is appealable to a district court for trial de novo. TEX. LOC. GOV'T CODE ANN. § 143.015(b) (West 2008). Trial de novo means review is limited to whether the Commission's decision is free of the taint of illegality and supported by substantial evidence. *See Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 955-56 (Tex. 1984). The reviewing court must inquire whether the evidence introduced before it shows facts in existence at the time of the administrative decision that reasonably support the decision. *Id.* at 956. Substantial evidence review is a limited standard of review, requiring "only more than a mere scintilla," to support the Commission's determination. *R.R. Comm'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790, 792–93 (Tex. 1995).

Although the trial court must hear and consider evidence to determine whether reasonable support for the administrative order exists, the Commission itself is the primary fact-finding body, and the question to be determined by the trial court is strictly one of law. *Id.* Accordingly, the reviewing court may not substitute its judgment for that of the agency on controverted issues of fact. *Id.* When substantial evidence supports either affirmative or negative findings the administrative order must stand, notwithstanding the Commission "may have struck a balance with which the court might differ." *Id.* The trial court may not set aside an administrative order merely because testimony was conflicting or disputed or because it did not compel the result reached by the Commission. *Id.* "Resolution of factual conflicts and ambiguities is the province

of the administrative body and it is the aim of the substantial evidence rule to protect that function." *Id.* The reviewing court is concerned only with the reasonableness of the administrative order, not its correctness. *Id.* If there is substantial evidence that supports the order, the court is bound to follow the discretion of the administrative body. *Id.* Appellee had the burden of demonstrating that the Commission's order was not supported by substantial evidence. *Id.*

As its basis for terminating appellee's employment, the City alleged the following:

(1) Violations of the Rules and Regulations of the Firefighters' and Police Officers' Civil Service Commission: conduct prejudicial to good order and violation of an applicable fire or police department rule or special order;

(2) Violations of Professional Conduct that require (a) obedience to any law; agency policy, rule, or procedure; and all lawful orders; and (b) all officers to not engage in conduct or activities on-duty or off-duty that reflect discredit on the officers, tend to bring the agency into disrepute, or impair its efficient and effective operation;

(3) Violations of the Laredo Police Department Rules or Special Orders that (a) require reports and written communications to reflect the truth; (b) require the on-duty and off-duty conduct and behavior of members to be governed by ordinary rules of good conduct and behavior; (c) prohibit public intoxication either on-duty or off-duty and prohibit driving a motor vehicle while under the influence of alcohol; (d) require members, while on sick leave, to remain at their place of residence unless it is necessary to go to the doctor, a pharmacy, or the hospital; and (e) require members to be attentive to their duties; not leave their beats or assigned areas except in the line of duty, upon a supervisor's authorization, or at the end of a scheduled tour of duty; and not devote any of their on-duty time to any activity other than that which relates to their duty assignment.

(4) Violation of the Texas Criminal Law Manual: terroristic threat.

The Chief of Police stated his decision to terminate appellee's employment was based on the unanimous recommendation to terminate made by the Laredo Police Department Disciplinary Review Board, whose report found terroristic threats, conduct unbecoming an officer, violations

of restrictions on activities while on sick leave, lack of truthfulness, and lack of attentiveness to duties.

The evidence before the Commission in support of this decision established the following. Appellee was granted sick leave for the purpose of caring for a sick child, but although the child was at home with a minor cold, appellee did not stay home to care for her because he "left the residence only to return later irate and kicking at the two doors to the residence." When he was given the chance later to change his leave from "sick leave" to "annual leave," he did not do so.[4] A police officer responding to Raquel's 911 call detected alcohol on appellee's breath, noticed his blood shot eyes, and noticed his slurred and "broken" speech. Appellee disobeyed the officer's orders to stay inside his truck and off the property to sleep off the effects of the alcohol by operating his vehicle from the street into the driveway. Once in the driveway, appellee's "behavior was erratic as [he] kept driving forwards and backwards in the driveway" and crashed into the fence as he backed his truck up against the house. Appellee was arrested for terroristic threats. Appellee said he was not threatening his wife with his truck; he was only trying to position the truck under a tree so he could sleep in the shade. He admitted he had one or two beers, but denied he was intoxicated.

Although some of the evidence was conflicting, resolution of factual conflicts and ambiguities was within the province of the Commission, not the trial court. We conclude that even absent consideration of the cell phone photos and video, the record contains "more than a scintilla" of evidence to support findings that appellee violated various departmental

---

[4] Appellee explained he did not change the records because he thought his sergeant would not give him "annual leave."

requirements, rules, and regulations. Therefore, the trial court erred in rendering summary judgment in favor of appellee.[5]

## CONCLUSION

For the reasons stated above, we reverse the trial court's order and render judgment affirming the Commission's order.

Sandee Bryan Marion, Justice

---

[5] The City's remaining issues on appeal do not need to be addressed because they are not dispositive. *See* TEX. R. APP. P. 47.1.